**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

SEP 15 2005

MATTHEW J. DYKMAN
CLERK

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff/Respondent,

v.

No. CIV 04-1421 JC/LCS
No. CR 00-1424 JC

JOSE AGUIRRE-MELENDREZ,

Defendant/Movant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court upon Movant Aguirre-Melendrez's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 filed December 21, 2004. (Doc. 1.) Movant attacks the Sentence entered on June 2, 2004 in the case styled *United States of America v. Jose Socorro Aguirre-Melendrez*, CR 00-1424 JC, United States District Court for the District of New Mexico (Doc. 462.) The United States Magistrate Judge, having reviewed the Petition and having considered the submissions of the Parties, the record herein, relevant authorities, and being otherwise fully advised, recommends that Movant's Petition be **DENIED**.

**I. PROCEDURAL HISTORY**

1. On July 13, 2000, Movant sold 88 pounds of marijuana to an undercover agent in Chaves County, New Mexico.

2. On July 14, 2000, Movant and a co-conspirator sold three ounces of methamphetamine to an undercover agent in Roswell, New Mexico.

3. On September 15, 2000, Movant and two co-conspirators met with an undercover



agent about the sale of a half of a pound of methamphetamine. Movant handed the agent one ounce of methamphetamine then left to get the remainder. Movant met again later with the agent, handed him five individually wrapped ounces of methamphetamine, and the agent paid for the drugs.

4. On October 27, 2000, Movant was indicted on the following counts:[1] 1) conspiracy to violate 21 U.S.C. §§ 841(b)(1)(B) and (b)(1)(C) in violation of 21 U.S.C. § 846; 2) possession with intent to distribute less than fifty kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), and 18 U.S.C. § 2; and 3) two counts of possession with intent to distribute more than fifty grams of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2. (Doc. 31/00CR1424.)

5. Movant agreed to enter a guilty plea to all four Counts pursuant to a plea agreement with the Government on March 30, 2004. (Doc. 454/00CR1424.) In the plea agreement, Movant and the United States agreed to the following terms: 1) that in addition to a reduction of two levels for acceptance of personal responsibility, Movant would receive an additional one level reduction if certain requirements were met; 2) that Movant played neither an aggravating nor mitigating role and so his offense level would not be increased nor decreased; 3) that Movant's offense level would be increased by two levels for obstruction of justice; and 4) that the amount of marijuana was 88 pounds and the amount of pure (actual) methamphetamine was 38.97 grams.

---

[1] Movant was indicted in a fifteen count indictment; Counts I, X, XI, and XIII pertained to Movant. (Doc. 31/00CR1424.)

6.      On June 2, 2004, Movant appeared before the Honorable Bruce D. Black, United States District Judge, and entered a plea of guilty pursuant to the plea agreement. (Doc. 465/00CR1424.) The Court accepted the plea agreement and guilty plea and sentenced Movant to 87 months in the custody of the Bureau of Prisons. (Doc. 462/00CR1424.) The sentence was imposed based on an offense level of 29, a criminal history category of I, and a sentencing range of 87-108 months. (Doc. 465/00CR1424.)

7.      Movant filed the present Motion to set aside the sentence pursuant to 28 U.S.C. § 2255 on December 23, 2004. (Doc. 1.) The § 2255 Motion is timely under the Antiterrorism and Effective Death Penalty Act. 28 U.S.C. § 2255, FED. R. APP. P. 4(b)(1)(A). The United States filed its Response to Movant's Motion on March 17, 2005 (Doc. 5), and a Motion to Dismiss the § 2255 Motion on June 2, 2005. (Doc. 8.) Movant responded to the Government's Motion to Dismiss on June 27, 2005. (Doc. 10.)

## II.   ANALYSIS

Movant raises the following issues in his Petition:

I.      Counsel was ineffective for failing to object to the criminal history category enhancement.

II.     Counsel was ineffective for failing to request the application of the safety valve under § 5C1.2 of the guidelines.

III.    Counsel was ineffective for failing to object to Movant being sentenced at the statutory minimum.

IV.     Counsel was ineffective for failing to object to the offense level of 30 based on drug quantity and minor role participant.

8.      After reviewing the motions, files, and records of the case, if this Court has any question as to whether the prisoner is entitled to relief, 28 U.S.C. § 2255 directs that I hold an

3

evidentiary hearing to "determine the issues and make findings of fact . . . ." When reviewing the motions, the Court will liberally construe a *pro se* litigant's pleadings and hold them to a less stringent standard than pleadings drafted by an attorney. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). If the record conclusively shows the Movant is not entitled to relief, the Court may deny his § 2255 motion without an evidentiary hearing. 28 U.S.C. § 2255; *United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988) (citation omitted).

9. Claims of ineffective assistance of counsel "present mixed questions of law and fact . . . ." *Fisher v. Gibson*, 282 F.3d 1283, 1290 (10th Cir. 2002) (citation omitted). To prove that his counsel's assistance was constitutionally ineffective, Mr. Aguirre-Melendrez has the burden of meeting the two prong test formulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. . . . Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process . . . .

*Id.* at 687.

10. To clear the first prong of *Strickland*, Movant must show that "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. "The proper measure of attorney performance [is] simply reasonableness under prevailing professional norms." *Id.* at 688. There is a strong presumption that the challenged actions of counsel come within this wide range; the actions must be viewed not from hindsight, but from counsel's perspective at the time. *Id.* at 689.

4

11. Should Movant demonstrate that his counsel's performance was constitutionally ineffective, he must also clear the second prong of *Strickland* by showing that he suffered prejudice. *Id.* at 691-92. Any prejudice "must be made in view of the strength of the government's case." *United States v. Clonts*, 966 F.2d 1366, 1370 (10th Cir. 1992) (citation and quotation marks omitted). He must "demonstrate that there is a 'reasonable probability' that the outcome would have been different had those errors not occurred." *Duvall v. Reynolds*, 139 F.3d 768, 777 (10th Cir. 1998) (citations and quotation marks omitted). A reasonable probability is one "sufficient to undermine confidence in the outcome" of the prior proceeding. *Strickland*, 466 U.S. at 694.

12. The Court need not address both prongs of the inquiry if Mr. Aguirre-Melendrez makes an insufficient showing on either deficient performance or prejudice. *Id.* at 697. Mr. Aguirre-Melendrez, in alleging ineffective assistance, bears the burden of alleging facts which, if proved, would entitle him to relief. *Hall v. Belmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Mere conclusory allegations without factual support are insufficient to meet this burden. *Id.*

**A.   Movant Fails to Sustain His Burden under *Strickland* on Ground One.**

13. Movant's first claim of ineffective assistance of counsel is based on the fact that counsel did not object to the criminal history category determination. (Doc. 1 at 5.) Movant asserts that he had no criminal history, but it is unclear whether he means that he is not the person who pled guilty to the 1997 charge listed in the Presentence Investigation Report (PSR), or that he believes the conditional discharge and probation he received regarding the 1997 charge should not count as a conviction under the United States Sentencing Guidelines (USSG). (*Id.*; PSR at 24.) Regardless of what Movant intended to argue, both interpretations fail. I note initially that

5

Mr. Aguirre-Melendrez failed to meet his burden of setting forth sufficient facts to support his allegations, and this Court is not bound to serve as Movant's advocate by supporting his argument for him. *Hall*, 935 F.2d at 1110.

14.     Movant fails to demonstrate ineffective assistance because he has presented absolutely no evidence to support his claim. If Movant is contending that the 1997 arrest listed in the PSR is not actually his, he was personally "in the best position to inform his counsel" that the information was incorrect. *United States v. Lindsey*, No. 97-6356, 1998 WL 458571, at *2 (10th Cir. Aug. 4, 1998). Movant presents no evidence that he told his counsel of the alleged error. *See id.* (citing *United States v. King*, 936 F.2d 477, 480 (10th Cir. 1991)). Further, noticeably absent from the sentencing hearing transcript was any claim by Movant that the criminal history category misrepresented his criminal history, nor does Movant suggest that he attempted to object at any point in the proceedings leading up to his sentencing. (Doc. 9, Sentencing Hearing Transcript at 2-3.) If Movant does not notify counsel of mistakes in the PSR, he "cannot fault his counsel for failing to challenge [it]." *Lindsey*, 1998 WL 458571, at *2. Consequently, Movant fails to meet *Strickland*'s first prong. *Strickland*, 466 U.S. at 690.

15.     Moreover, Movant does not meet *Strickland*'s first prong if he is arguing that it was error to count one point for a plea of guilty that resulted in a conditional discharge and probation. USSG § 4A1.2(f) states that "[a] diversionary disposition resulting from a[n] . . . admission of guilty . . . is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered . . . ." U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(f) (2004). Movant does not provide any evidence to disprove the fact that he pled guilty to a charge of possession of marijuana; therefore, the guilty plea was correctly counted as one point under the direction of

6

USSG §§ 4A1.1(c) and 4A1.2(f). Again, Movant had the opportunity to object to the PSR during his sentencing hearing, but when the judge asked Movant if he wished to address the Court prior to sentencing, Movant did not. (Doc. 9, Sentencing Hearing Transcript at 3.) Nor did Mr. Aguirre-Melendrez interject when the Court asked his attorney if there were any challenges to the factual statements in the PSR. (*Id.* at 2.) Because Movant submits no basis for a proper objection to counting the guilty plea, he has not proven his counsel was ineffective for failing to object to the resultant criminal history category. *Strickland*, 466 U.S. at 690.

16.     Finally, Movant was not prejudiced by any failure to object to a criminal history category of I, so he does not meet *Strickland*'s second prong. A criminal history category of I includes defendants with zero to one point from the criminal history computation. U.S. SENTENCING GUIDELINES MANUAL ch. 5, pt. A, sentencing tbl. Even if counsel had objected to and succeeded in having the prior charge removed from the PSR, Movant still would have been given a criminal history category of I with a zero point total. Mr. Aguirre-Melendrez has failed to meet either prong of the *Strickland* test, and I recommend that his first claim of ineffective assistance of counsel be denied.

**B.     Movant Fails to Satisfy the *Strickland* Test on Grounds Two, Three, or Four.**

17.     Movant's second claim is that counsel was ineffective for failing to request application of the safety valve under § 5C1.2 of the USSG. (Doc. 1 at 5; *see also* 18 U.S.C. § 3553(f).) Section 5C1.2 directs the sentencing court to disregard a statutory minimum sentence if the defendant meets five specific criteria. U.S. SENTENCING GUIDELINES MANUAL § 5C1.2. The fifth subsection requires the defendant to disclose information to the Government regarding his own and others' involvement in the crime. *Id.* Movant "has the burden of proving, by a

7

preponderance of the evidence," that he qualified for safety valve application. *United States v. Verners*, 103 F.3d 108, 110 (10th Cir. 1996). The Government submits that Movant was not safety valve eligible because he did not give a full, truthful, and accurate debriefing. (Doc. 5 at 13.) On the other hand, Movant contends that the Government stated he met the criteria to qualify for the safety valve, but does not give the Court any guidance as to when or where this occurred. (Doc. 10 at 6.) I have scoured the record for evidence of the Government assuring Movant that he qualified for application of the safety valve but could find nothing. *See Verners*, 103 F.3d at 110; *Hall*, 935 F.2d at 1110. Movant fails to allege any facts that prove he was either unaware of the opportunity to debrief, or that he did debrief fully. (*See* Doc. 10 at 6.) Movant has failed to meet his burden of proving he qualified for the safety valve, and has consequently failed to prove prejudice; therefore, his claim does not meet *Strickland*'s second prong and should be denied.

18. Mr. Aguirre-Melendrez's third claim alleges ineffective assistance for counsel's failure to "object to Movant being sentenced at the statutory minimum." (Doc. 1 at 5.) In his response to the Government's Motion to Dismiss (Doc. 8), Movant outlines a cursory analysis of how he feels his offense level should have been calculated. (Doc. 10 at 6-7.) Movant mistakenly asserts that the parties agreed to a base offense level of 28 in the plea agreement. (*Id.* at 6.) The plea agreement does not mention a base offense level (Doc. 454/00CR1424); rather, the PSR calculates a base offense level of 30 using the amount of drugs for which Movant agreed he was responsible. (PSR at 23.) He contends that counsel should have objected to the drug quantity; however Movant himself agreed to that quantity when he accepted the plea agreement (Doc. 454/00CR1424 at 5), when he acknowledged the amount was correct at the change of plea

8

hearing (Doc. 9, Plea Hearing Transcript at 10-11), and when he raised no objections to factual findings in the PSR at his sentencing hearing. (Doc. 9, Sentencing Hearing Transcript at 2.)

19. Next, Movant asserts there should have been a two level decrease for the safety valve, and a four level decrease because he played neither an aggravating nor a mitigating role. (Doc. 10 at 6.) I have already established that his safety valve argument fails; his claim regarding a four level decrease for his role is simply contrary to the USSG. Pursuant to the USSG, because the parties agreed Mr. Aguirre-Melendrez played neither an aggravating nor a mitigating role, no adjustment was warranted, nor was one given. *See* U.S. SENTENCING GUIDELINES MANUAL §§ 3B1.1 & 3B1.2; PSR at 24. Finally, Movant states that the sentencing judge should not have enhanced his sentence without a jury determination of specific facts regarding the two level increase he received for obstruction of justice under U.S. SENTENCING GUIDELINES MANUAL § 3C1.1). (Doc. 10 at 7-8.) According to the PSR, a two level increase was warranted because Movant relocated to another city and used an alias during the course of the Government's investigation even though he knew there was a warrant for his arrest. (PSR at 24.) Movant "willfully obstructed or impeded . . . the administration of justice during the course of the *investigation*" (U.S. SENTENCING GUIDELINES MANUAL § 3C1.1, emphasis added), and he chose not to object to that factual finding (Doc. 9, Sentencing Hearing Transcript at 2), so the two level increase was proper. In fact, Movant admitted in court that he and the Government had agreed to a two level increase for obstructing justice. (Doc. 9, Plea Hearing Transcript at 10.) Movant's calculations yielding a sentencing range of 30-37 months based on an offense level of 19 are incorrect. Movant fails to allege any accurate facts or law to support his contention that counsel's failure to object to his ultimate offense level or sentencing range prejudiced him. If he cannot

9

show that he was prejudiced, he fails the second prong of *Strickland*, and his third claim should be denied.[2]

20.     In his fourth claim, Movant alleges ineffective assistance for counsel's failure to object to the offense level of 30 based on drug quantity and for his failure to object to Movant not being labeled as a minor role participant. (Doc. 1 at 6.) Again, Movant cites no facts or law to support his position, and fails to appreciate that he agreed to the drug quantity and to the characterization of his role in the criminal activity on three occasions. The plea agreement stated that "defendant played neither an aggravating nor mitigating role . . . [and so] his offense level should neither be increased nor decreased"; and "defendant is responsible for conspiring to possess . . . 38.97 grams pure (actual) methamphetamine and 88 pounds of marijuana." (Doc. 454/00CR1424 at 5.) During his change of plea hearing, the Court said, "because you played neither an aggravating or mitigating role, you're not entitled to an increase or decrease. Is that correct?" (Doc. 9, Plea Hearing Transcript at 10.) Movant responded, "Yes." (*Id.*) The Court also asked if Movant accepted "responsibility for conspiring to possess with intent to distribute 38.97 grams of pure methamphetamine and 88 [pounds] of marijuana;" Mr. Aguirre-Melendrez said "Yes." (*Id.*) Finally, Movant did not object to the factual findings in the PSR, nor did he address the Court when given the opportunity during the sentencing hearing. (Doc. 9, Sentencing Hearing Transcript at 2-3.) Movant is not arguing that his plea was not knowing or voluntary.

---

[2] If Movant is contending that a jury should have found obstruction beyond a reasonable doubt before the Court could increase his sentence, he is incorrect. As noted previously, Mr. Aguirre-Melendrez admitted to obstruction of justice. *See United States v. Booker*, 125 S. Ct. 738, 749 (2005) ("the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts . . . admitted by the defendant") (citation, quotation marks, and emphasis omitted). Furthermore, Movant received his sentence before *Booker* (Doc. 462), and the Tenth Circuit has held that *Booker* does not apply retroactively to new habeas petitions. *United States v. Bellamy*, 411 F.3d 1182, 1186-87 (10th Cir. 2005).

10

He presents no facts to show that the drug quantity was incorrect, that he played a minor role in the crimes charged, or that he notified counsel of any alleged mistakes; as a result, he "cannot fault his counsel for failing to challenge" either factual conclusion. *Lindsey*, 1998 WL 458571, at *2. Mr. Aguirre-Melendrez fails to prove his counsel's performance was deficient so does not satisfy *Strickland*'s first prong. His fourth claim should also be denied.[3]

### C.   Summary

21.   The record conclusively shows that Mr. Aguirre-Melendrez is not entitled to relief. 28 U.S.C. § 225. I have not found, nor has Movant offered, any facts or law to support the claims as set forth in Movant's habeas Petition or his subsequent Response to the Government's Motion to Dismiss. Movant has failed to demonstrate ineffective assistance of counsel because there is no evidence that his attorney's performance was deficient or outside the acceptable range of professional conduct. *Strickland*, 466 U.S. at 690. Moreover, because Mr. Aguirre-Melendrez signed a plea agreement, to satisfy *Strickland*'s second prong Movant must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In this case, if Mr. Aguirre-Melendrez had been convicted after a jury trial, the total offense level would have been 32 with a criminal history category of I, resulting in a USSG imprisonment range of 121 to 151

---

[3] In his response to the Government's Motion to Dismiss, Movant asserts a new ground for ineffective assistance of counsel. (Doc. 10 at 4-5.) He claims that his attorney failed to conduct a sufficient investigation of the case by interviewing each witness the Government relied on in the Indictment. (*Id.*) When an ineffective assistance claim centers on a failure to investigate and elicit testimony from witnesses, the movant must demonstrate, with some precision, the content of the testimony they would have given at trial. *See Lawrence v. Armontrout*, 900 F. 2d 127, 130 (8th Cir. 1990) (quoted in *Johnson v. Champion*, No. 935018, 1993 WL 425407, at *4 (10th Cir. Oct. 19, 1993). Movant fails to allege any factors indicating that additional investigation or preparation would have altered the outcome of his case; further, he neither identifies the witnesses nor makes any effort to prove what their testimony would have been or even if it would have been favorable. Movant's new claim, which was not raised in his original Petition, fails *Strickland*'s second prong and should be denied.

11

months. (PSR at 29.) By pleading guilty, Movant gained a considerable benefit: his prison sentence was 34 to 64 months less than it would have been without the plea had he been convicted after a trial. (*Id.*) Movant did not claim that he would have pleaded not guilty and insisted on trial but for his attorney's alleged errors, nor could I find any prejudice if Movant had made such an argument. *Hill*, 44 U.S. at 59. Movant fails to meet *Strickland*'s second prong. Because the record conclusively shows Mr. Aguirre-Melendrez is not entitled to relief, I find it unnecessary to hold an evidentiary hearing in this matter. 28 U.S.C. § 2255.

### III. RECOMMENDATION

22. I recommend that Mr. Aguirre-Melendrez's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 be **DENIED**. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**

153 F.3d 729 (Table)                                                                                  Page 1
153 F.3d 729 (Table), 1998 WL 458571 (10th Cir.(Okla.)), 98 CJ C.A.R. 4202
Unpublished Disposition
(Cite as: 153 F.3d 729, 1998 WL 458571 (10th Cir.(Okla.)))

**Briefs and Other Related Documents**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA10 Rule 36.3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Tenth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roy Leon LINDSEY, Jr., Defendant-Appellant.
No. 97-6356.

Aug. 4, 1998.

Before TACHA and McKAY, Circuit Judges, and BROWN, [FN**] Senior District Judge.

> FN** Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

ORDER AND JUDGMENT [FN*]

> FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

TACHA, Judge.

**1 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Roy Leon Lindsey, Jr. pled guilty to possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and was sentenced to 125 months in prison. He voluntarily dismissed his direct appeal. He now appeals the district court's denial of his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Lindsey contends that his counsel was constitutionally ineffective for failing to challenge the quantity of methamphetamine and his alleged ownership of a gun listed in his presentence report and for failing to request a downward departure. He also contends that the district court erred by failing to hold an evidentiary hearing and correspondingly to appoint counsel to represent him. We previously granted Lindsey a certificate of appealability and appointed counsel to represent him on appeal. Because the district court did not make any factual findings, our review of its denial of Lindsey's § 2255 motion is de novo. *See United States v. Cox,* 83 F.3d 336, 338 (10th Cir.1996).

Lindsey was arrested after a fire he had built on the floor of his stalled vehicle got out of control, and firefighters and Oklahoma state police arrived to extinguish the fire and investigate. In the partially burned vehicle, officers found a loaded .357 Ruger pistol under the driver's seat, several lumps of a white substance that appeared to be wrapped in plastic and packed in bundles, and various glassware including beakers, flasks and tubing. The presentence report noted that the gun was owned by and registered to Lindsey. The report also stated that lab analysis determined that the bundles recovered from the vehicle had a weight of 454 grams including packaging and that the substance in the bundles was methamphetamine weighing 198.36 grams. Lindsey did not object to these statements in the presentence report, and the district court relied on the stated amount of methamphetamine (U.S.S.G. § 2D1.1(c)(7)) and possession of the gun (U.S.S.G. § 2D1.1(b)(1)) in determining his offense level. [FN1]

> FN1. The district court used the 1995 edition of the Sentencing Guidelines Manual.

In his § 2255 motion, Lindsey contends that his counsel was ineffective for failing to challenge the amount of methamphetamine and his alleged ownership of the gun. [FN2] He contends that because the methamphetamine melted together with its plastic wrapping in the vehicle fire, the lab analysis of the relative weights of methamphetamine and wrapping may have been wrong. Therefore, he continues, his counsel should have obtained an independent estimate of the amount of the drug, and "[d]epending on the estimate and the district court's assessment of its reliability, Lindsey's offense level may well have been lower." Appellant's Suppl. Opening Br. at 11. He also contends that because he has never owned or registered a .357 Ruger pistol and was not aware it was in the vehicle, his counsel should have challenged

153 F.3d 729 (Table)  
(Cite as: 153 F.3d 729, 1998 WL 458571, **1 (10th Cir.(Okla.)))

Page 2

his two-level adjustment for possession of the gun.

> FN2. The brief filed by appointed counsel did not address the gun, but Lindsey's pro se brief filed prior to the appointment of counsel did.

**2 To establish ineffective assistance of counsel, a defendant must show both that his counsel's performance was constitutionally deficient, and that this deficient performance prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the first prong of this test, a defendant must establish "that counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Under this standard, "[j]udicial scrutiny of counsel's performance must be highly deferential," and the court must avoid the "distorting effects of hindsight." *Id.* at 689. Under the second prong of the *Strickland* test, a defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

We conclude that Lindsey has failed to show that his counsel was constitutionally ineffective. He has made no allegation, much less presented any evidence, that the lab analysis of the amount of methamphetamine was wrong. He is simply speculating that it may have been wrong, that through appointment of counsel, further analysis and an evidentiary hearing, he may be able to show that the amount of the drug he possessed was disputed, and that the district court may have found his theoretical evidence more credible. Such layers of speculation are insufficient to show prejudice. *See Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir.1997); *Garrett v. United States*, 78 F.3d 1296, 1302 (8th Cir.1996). Moreover, defendant personally was in the best position to inform his counsel both that the amount of methamphetamine he admitted possessing was overstated [FN3] and that he did not own the gun the presentence report stated was registered in his name, yet he does not contend that he told his counsel about these alleged errors. In this regard, defendant thus cannot fault his counsel for failing to challenge the presentence report. *Cf. United States v. King*, 936 F.2d 477, 480 (10th Cir.1991) ("An attorney's failure to investigate cannot be charged as a claim of 'ineffective assistance of counsel' when the essential and foundational information required to trigger such an investigation is withheld from the defendant's attorney by the defendant himself.") (quotation omitted).

> FN3. Nor has he ever stated in this § 2255 action that, based on his personal knowledge, the amount was overstated.

Lindsey also claims that his counsel was ineffective for failing to request a downward departure on the basis that his criminal history category overrepresented the seriousness of his criminal past because his criminal history consisted largely of non-violent, substance-abuse related conduct. Lindsey's past does not present a strong case for departure. His criminal history category of VI (13 or more points) resulted from his accumulation of 17 points for convictions for possession of marijuana, driving after declared habitual traffic violator, possession of drug paraphernalia, aggravated false impersonation, driving under the influence of alcohol (twice), theft by deception, and serving a sentence at the time of offense. Other convictions for possession of methamphetamine and paraphernalia were not counted because they were related offenses. *See* U.S.S.G. § 4A1.2 Application Note 3. He had eight other arrests that included six drunk driving charges and several charges for possession of marijuana and methamphetamine that were dismissed as parts of plea agreements. His criminal conduct has continued from 1985 to the time of his current offense. *Cf.* U.S.S.G. § 4A1.3 (citing as example of possibly overrepresentative criminal history level, case of defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of criminal behavior in intervening period). As we have said before, "driving under the influence of alcohol is not inherently non-violent." *United States v. Jones*, 80 F.3d 436, 439 n. 2 (10th Cir.1996). Finally, counsel did state at sentencing that most of Lindsey's crimes were substance-abuse related, so the court was aware of this as a possible basis for departure. [FN4] Given this situation, counsel's failure to request a downward departure was not such a serious error, if error at all, that his counsel's performance was constitutionally deficient.

> FN4. The court was also aware of this information when, from a range of 110 to 137 months, it chose to sentence Lindsey to 125 months.

**3 Because Lindsey's ineffective counsel claims lack merit, the district court did not abuse its discretion by not holding an evidentiary hearing. *See Lasiter v. Thomas*, 89 F.3d 699, 702 (10th Cir.1996). The judgment of the district court is AFFIRMED.

153 F.3d 729 (Table), 1998 WL 458571 (10th

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

153 F.3d 729 (Table)                                                                                                 Page 3
(Cite as: 153 F.3d 729, 1998 WL 458571, **3 (10th Cir.(Okla.)))

Cir.(Okla.)), 98 CJ C.A.R. 4202 Unpublished
Disposition

**Briefs and Other Related Documents (Back to top)**

. 97-6356 (Docket)
(Oct. 22, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

9 F.3d 117 (Table)                                                                                                      Page 1
9 F.3d 117 (Table), 1993 WL 425407 (10th Cir.(Okla.))
Unpublished Disposition
(Cite as: 9 F.3d 117, 1993 WL 425407 (10th Cir.(Okla.)))

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA10 Rule 36.3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Tenth Circuit.
Kenneth JOHNSON, Petitioner-Appellant,
v.
Ron CHAMPION, Respondent-Appellee.
No. 93-5018.

Oct. 19, 1993.

Before LOGAN and BRORBY, Circuit Judges, and KANE, [FN**] District Judge.

ORDER AND JUDGMENT [FN1]
**1 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.   *See* Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

Petitioner-appellant Kenneth Johnson was convicted in Oklahoma state court of first degree rape after former conviction of a felony.  He brought a 28 U.S.C. 2254 petition for writ of habeas corpus, alleging ineffective assistance of counsel.  He appeals from the district court's denial of the petition.  We affirm.

At petitioner's trial D.M.B. testified that petitioner, whom she knew through her son, came to her house around 9:00 p.m. on August 14, 1980.  He told her he had been in a car accident and hurt his hand.  She washed and bandaged his hand.  After trying unsuccessfully to telephone someone to pick him up, he raped D.M.B.  He then made another telephone call and told someone to pick him up at 11th and Garnett.  He left at about 10:00 p.m.

D.M.B. washed the bloody linens in cold water.  She reported the attack to her personal physician the next morning.  He examined D.M.B. and observed swelling and bleeding which he thought was evidence of forceful entry of the vagina.  However, he did not perform a rape examination or preserve evidence because he was unable to introduce any type of instrument internally due to pain and swelling.

Petitioner testified at his trial that he had an auto accident sometime in August 1980 near his friend, Susie's, house.  He went to her house and made some telephone calls.  He then walked to a U-Tote-M on Garnett where he called his aunt and uncle.  They picked him up on 21st and Garnett and took him to his parents' home.  He cut his hand on a beer bottle at the U-Tote-M.  He denied going to D.M.B.'s house that evening or raping her, although he admitted that his accident occurred a few blocks from her house.  He did not know how D.M.B. knew that he had a car accident except that it was common knowledge in the neighborhood.

Petitioner's brother, Jerry Johnson, testified at trial that he saw petitioner at 9:00 p.m. at their parents' house the night petitioner wrecked his car, sometime in August 1980.  He (Jerry) stayed at his parents' house until 9:30 p.m., then took petitioner to 11th and Garnett to get his car.  He noticed that petitioner had cut his hand.

Petitioner was found guilty and sentenced to ninety-five years' imprisonment.  His conviction was affirmed on direct appeal.  His first federal habeas action was dismissed without prejudice for failure to exhaust state remedies.

Petitioner filed a state application for postconviction relief claiming ineffective assistance of counsel.  The state trial court denied the application, but the state appellate court reversed and remanded for an evidentiary hearing.  Following that hearing the state trial court made findings, concluded that petitioner was not denied effective assistance of counsel, and denied the application.  The state appellate court affirmed.  Petitioner's second state application for postconviction relief was denied.  [FN2]

**2 Petitioner commenced the present action for federal habeas corpus relief in August 1991, claiming ineffective assistance of counsel.  Without holding an evidentiary hearing, a magistrate judge issued a report and recommendation adopting the state court findings pursuant to 28 U.S.C. 2254(d), [FN3] and concluding that petitioner received effective assistance of counsel.  The district court agreed and denied the petition.  [FN4]

To prevail on an ineffective assistance of counsel claim, a habeas petitioner must show both that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

9 F.3d 117 (Table)  
(Cite as: 9 F.3d 117, 1993 WL 425407, **2 (10th Cir.(Okla.)))

Page 2

counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The first prong of the *Strickland* test requires a showing that counsel's errors were so serious counsel "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.,* that is, "counsel's representation fell below an objective standard of reasonableness," *id.* at 688. In evaluating counsel's performance, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)).

The second prong of the *Strickland* test requires a showing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The state court's conclusion that counsel provided effective assistance is not a finding of fact binding on the federal courts to the extent stated in 28 U.S.C. 2254(d). *Id.* at 698. "Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of 2254(d) ... both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.* We review these determinations de novo. *United States v. Owens,* 882 F.2d 1493, 1502 n.16 (10th Cir.1989).

Petitioner contends he should have been afforded a hearing in federal court. Where the facts are disputed, the federal district court must hold an evidentiary hearing on a habeas petition if the petitioner did not receive a "full and fair evidentiary hearing in a state court." *Townsend v. Sain,* 372 U.S. 293, 312 (1963), *overruled in part on other grounds, Keeney v. Tamayo-Reyes,* 112 S.Ct. 1715, 1717 (1992). Petitioner argues he was entitled to another evidentiary hearing because the state court's findings are erroneous. As will be explained more fully below, we conclude the state court findings are not erroneous. That those findings conflict with testimony provided by petitioner's witnesses does not mean the findings are erroneous or the hearing was inadequate.

**3 Petitioner also appears to challenge the adequacy of the state court evidentiary hearing because his trial counsel, Frank Laphen, was not called as a witness at that hearing. However, the parties represented to the state court that Laphen had no independent memory of the case but made notes, and they would proceed with that understanding. Petitioner personally and through counsel stated that was agreeable to him. Neither party called Laphen as a witness. Thus, petitioner has not shown he was denied a full and fair hearing in state court.

Petitioner contends that Laphen was ineffective because he failed to interview several potential witnesses and failed to call several alibi witnesses to testify at trial. At the state court evidentiary hearing petitioner presented the testimony of Susie Barolin, Virgil Teague, Peggy Lou Johnson, and Tabitha Johnson, none of whom were called as witnesses at trial. Barolin testified that petitioner was at her house the day of the assault. She does not remember when he left but thought it was after dark. He returned a little while later because he had done something to his car.

Petitioner contradicted Barolin's testimony, claiming he left her house before dark. Barolin's assistance as an alibi witness is therefore questionable. We conclude there are no grounds under 2254(d) for disregarding the state court finding that Barolin would not have been able to provide an alibi. [FN5] The failure to call her as a witness did not constitute ineffective assistance.

Virgil Teague, petitioner's uncle, testified at the evidentiary hearing that petitioner called him at about 6:00 p.m. on August 14, 1980, from a telephone booth. Petitioner told Teague he had been in a car accident and hurt his hand in the accident. Teague picked up petitioner around dusk, and drove him to his parents' house. They arrived at about 9:00 p.m. Teague left about a half-hour later. Teague claimed he gave this information to Laphen before trial. Laphen's notes indicate that he spoke with Teague before trial.

The state court found Laphen's notes indicated petitioner called Teague at about 10:00 p.m., and Laphen may have determined that Teague's testimony would not help the case. At the top of Laphen's notes is Virgil Teague's name. Underneath Teague's name the notes state "called from Mingo or Garnett-" with a symbol indicating around or about 10 p.m., and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

F.3d 117, 1993 WL 485411, **3 (10th Cir.(Okla.))

go on to describe the details of the car accident. R. Supp. Vol. 1, State's Ex. 2. While not completely free of ambiguity, these notes are adequate to support the state court's finding that Teague told Laphen petitioner called him at 10:00 p.m. Because D.M.B. testified that petitioner called someone to pick him up and then left her house at around 10:00 p.m., Laphen reasonably could have chosen not to call Teague as a witness because Teague would have been unable to establish an alibi.

Peggy Johnson, petitioner's mother, testified at the evidentiary hearing that Teague brought petitioner home at about 9:00 or 9:30 p.m. the night of August 14, 1980. She provided this information to Laphen before trial. Even if this testimony would have established an alibi, we conclude Laphen's failure to call Peggy Johnson as a witness did not constitute ineffective assistance of counsel. The same testimony was presented at trial by Jerry Johnson. Counsel is not ineffective for failing to present cumulative evidence. *United States v. Jackson*, 935 F.2d 832, 846 (7th Cir.1991); *Brogdon v. Blackburn*, 790 F.2d 1164, 1168-69 (5th Cir.1986), *cert. denied*, 481 U.S. 1042 (1987); *United States v. Schaflander*, 743 F.2d 714, 719 (9th Cir.1984), *cert. denied*, 470 U.S. 1058 (1985).

**4 Tabitha Johnson, petitioner's sister, testified at the state evidentiary hearing that she remembered petitioner coming home the night of August 14, 1980, but could not remember when he arrived or left, and admitted she remembered hardly anything about the night. Petitioner did not prove that Tabitha Johnson could have established an alibi; thus, the failure to call her as a witness at trial did not constitute ineffective assistance of counsel.

Petitioner lists numerous other potential witnesses whom Laphen did not interview or call to testify at trial. [FN6] Under most circumstances, [FN7] to establish ineffective assistance of counsel one must "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. "To affirmatively prove prejudice, a petitioner ordinarily must show not only that the testimony of uncalled witnesses would have been favorable, but also that those witnesses would have testified at trial." *Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir.1990). When an ineffective assistance claim centers on a failure to investigate, "[t]he focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming its admissibility in court, would have produced a

different result." *United States ex rel. Cross v. DeRoberts*, 811 F.2d 1008, 1016 (7th Cir.1987). Ordinarily, such information would be presented through the testimony of the potential witnesses. *Id.* If the witnesses do not testify, the petitioner must explain why and " 'demonstrate, with some precision, the content of the testimony they would have given at trial.' " *Lawrence*, 900 F.2d at 130 (quoting *Cross*, 811 F.2d at 1016).

Petitioner failed to present the testimony of these potential witnesses at the state evidentiary hearing. failed to explain why they did not testify at that hearing, and failed to make a showing at that hearing what their testimony would have been. Petitioner did not carry his burden of affirmatively proving that Laphen's failure to call these witnesses prejudiced the defense.

Petitioner also claims Laphen was ineffective for failing to present evidence at trial that D.M.B. had a vendetta against petitioner. Specifically, this evidence would have established that petitioner and D.M.B.'s son were friends. They committed a burglary with a third person. D.M.B.'s son was caught trying to hock the stolen goods. He would not implicate petitioner in the crime, and received a longer sentence as a result. D.M.B. was angry at petitioner because she knew he was involved, and threatened to get even. Petitioner made an offer of proof at the state hearing that D.M.B. followed through on a threat to the other participant in the burglary by lending him her car and then turning him in for stealing it.

Petitioner testified at the evidentiary hearing that he did not bring out the evidence because Laphen advised him not to and did not ask questions to elicit the evidence. Even if petitioner acquiesced in Laphen's advice not to bring out the evidence, a matter not made clear by the evidence, his consent is only as good as the advice which informed that consent. *See Loe v. United States*, 545 F.Supp. 673, 683 (E.D. Va.1982). The critical question is whether that advice was within the range of competence required of a criminal defense attorney. *Id.*

**5 The district court concluded that Laphen's failure to present this evidence was within the wide range of professional competence. In evaluating this conclusion we must keep in mind that petitioner had the burden of overcoming the presumption that Laphen's conduct might be considered sound trial strategy. "We need not determine the actual

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page

explanation for trial counsel's failure to [take certain action], so long as his failure to do so falls within the range of reasonable representation." *Morris v. California*, 966 F.2d 448, 456 (9th Cir.1991), *cert. denied*, 113 S.Ct. 96 (1992).

Laphen reasonably could have wanted to keep the jury from learning that petitioner engaged in criminal behavior in addition to the one prior conviction petitioner admitted at trial. [FN8] Further, Laphen reasonably could have concluded the fact that D.M.B. allegedly made the threat two or three years before August 14, 1980, diminished the likelihood that the rape charge was connected to the threat. We conclude that a tactical decision by Laphen to keep out the evidence for these reasons would have been reasonable. Petitioner offered no evidence that other reasons motivated Laphen's actions.

Petitioner next contends Laphen was ineffective for not obtaining a transcript of the preliminary hearing. Laphen's notes showed few discrepancies of any significance between the preliminary hearing and trial testimony. Petitioner has not established that Laphen's failure to order a transcript was unreasonable, or that it prejudiced the defense.

Finally, petitioner argues that Laphen was ineffective for failing to strike prospective juror Sarah Stevenson from the panel after learning that her cousin had been raped. He claims that at the time of this juror's sitting Laphen had not used any peremptory challenges. The record is unclear how many challenges Laphen had used when Stevenson was seated. Assuming Laphen had peremptory challenges available, petitioner still had the burden of proving that Laphen's failure to strike Stevenson was not the result of trial strategy. He offered no evidence to this effect.

Nor has petitioner provided evidence that Stevenson was actually biased. [FN9] Rather, he appears to contend that her bias should be implied. Whether juror bias may be implied from the circumstances is a question of law. *Burton v. Johnson*, 948 F.2d 1150, 1158 (10th Cir.1991). The implied bias doctrine is to be applied only in

'extreme' situations where the prospective juror is connected to the litigation at issue in such a way that is highly unlikely that he or she could act impartially during deliberations ... [such as] where the prospective juror has been the victim of a crime or has experienced a situation similar to the one at issue in the trial.

*Hunley v. Godinez*, 975 F.2d 316, 319 (7th Cir.1992). We conclude the fact that a juror had a cousin who had been raped is not the type of extreme situation from which bias can be implied.

**6 Petitioner's request for appointment of counsel is denied. The court on its own motion waives Fed.R.App.P. 28(g) limiting the appellant's opening brief to fifty pages.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED. The mandate shall issue forthwith.

FN** Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

FN1. This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3.

FN2. Respondent conceded that petitioner exhausted his state remedies. R. Vol. I doc. 5 at 2.

FN3. Certain state court findings are presumed correct unless one of the factors listed in 28 U.S.C. 2254(d) applies.

FN4. The district court did not indicate whether it also adopted the state court's findings.

FN5. Petitioner concedes in his brief that Barolin was not the foundation of his alibi. Aplt's Br. at 59.

FN6. They are Donna Teague, Valerie Johnson, Joe Johnson, Isaac Johnson, Jimmy Johnson, Scott Yocum, and Earl Bailey, Jr.

FN7. This case does not present circumstances under which prejudice could be presumed. *Compare Strickland*, 466 U.S. at 692-93.

FN8 The record indicates that petitioner was arrested on October 11, 1975, for burglary. He was convicted on January 19, 1976, of an amended charge of knowingly receiving stolen property. Petitioner testified that he met D.M.B.'s son the spring of 1978. Thus, his 1976 conviction could not have been for criminal conduct committed with D.M.B.'s son.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

9 F.3d 117 (Table) Page 5
(Cite as: 9 F.3d 117, 1993 WL 425407, **6 (10th Cir.(Okla.)))

FN9. The jury selection was not transcribed, and Stevenson was not called as a witness at the state evidentiary hearing.

9 F.3d 117 (Table), 1993 WL 425407 (10th Cir.(Okla.)), Unpublished Disposition

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.